## 47140. BLACKMON v. J. D. JEWELL, INC.

HALL, Presiding Judge. The Commissioner appeals from the judgment for the taxpayer setting aside a sales tax assessment.

The taxpayer is engaged in the business of producing poultry in great volume and for an international market. It maintains a vertical operation, i.e., it produces virtually all the necessary supplies and operates the necessary facilities which result in the finished poultry product. It operates research facilities, breeder flocks, hatcheries, growing farms, a feed mill, a processing plant (slaughtering, freezing, packaging, cooking) a by-products plant, and a large sales and administrative organization.

The Commissioner made an assessment for taxes claimed due on purchases of antibiotics, vaccines, disinfectants, vitamins and other drug items used in the raising of poultry. Many of these items are mixed with the grains at the feed mill. Others are administered in drinking water or by inoculation. The taxpayer contends that all these items are exempt as industrial materials.

The Sales Tax Act provides that no tax be imposed on purchases of ". . . industrial materials for further processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials become a component part of the finished product . . . [or] that are coated upon or impregnated into the product at any stage of its processing, manufacture or conversion. . ." *Code Ann.* § 92-3403a (C) (2).

The Commissioner concedes that these drug items are necessary for the large scale, commercial production of poultry and that the term "industry" is appropriate to describe this business, in a lay sense; but that these items are not exempt industrial materials under the Act. While industrial materials impregnated into the product need not remain in it permanently (*Hawes v. Bibb Mfg. Co.*, 224 Ga. 141 (160 SE2d 355)), the Commissioner contends they must be administered during a stage of "processing, manufacture or conversion," rather than during a natural growth stage for biological purposes. In other words, "processing" (as defined by Webster) does not begin until the slaughterhouse is reached.

We believe the trial court answered this contention in its findings. "It would be an unrealistic construction of the word 'industry' to exclude from that definition any part of the entire production process; that is, all the interdependent phases or segments of the commercial production of poultry. . . Certainly in this state . . . the 'poultry industry' . . . is not a backyard process. It is not merely agriculture. . . 'Industry' is inclusive of agricultural production of a growth product such as poultry as commercially produced, processed and converted for market under the large-scale conditions utilizing [these] scientific methods, research and marketing techniques. . . It would be unacceptable to say that the materials here involved in the growth and production of poultry are not used in industry. . . They are essential to the product produced. . . The expressed intention of the General Assembly . . . was to prevent a duplication of the tax im-

posed by the Act. To tax something that becomes a part of the poultry . . . prior to the time when the consumer product is processed, constitutes a duplication of the tax within the meaning of Section 2 (6) of the Act and is not permissible."

The trial court said, in effect, that the operative word is "industry" rather than "manufacture," "process" or some equivalent. The Commissioner further contends that the General Assembly intended any natural growth process to be considered as something completely distinct from an industrial process. His evidence for this intent is a separate exclusion in the Act for feeds, fertilizer, etc. *Code Ann.* § 92-3403a (C) (2) (b). We cannot agree with this logic. That particular exclusion shows no more than a clear intent to favor traditional agriculture.

Growth of living substances can be part of an industrial process when it is but one stage in the development of the end product and when the growth itself is so artificially controlled as to be "unnatural." A parallel with the drug industry suggests itself. Growth of molds, viruses and other organisms is a substantial part of the manufacturing process, but we doubt the Commissioner would contend that the culture materials of that industry should be subject to the sales tax because the Act excludes feeds and fertilizers.

As the trial court recognized, the key is in non-duplication of the tax. The cost of the final poultry product will reflect all the items which went into it and the sales tax will be collected upon that final price. In this respect, the taxpayer will be in the same position as any other industry in the state. We believe this is where the legislature intended it to be.

*Judgment affirmed. Bell, C. J., Eberhardt, P. J., Quillian, Evans, Clark and Stolz, JJ., concur. Deen, J., concurs specially. Pannell, J., dissents.*

ARGUED MAY 3, 1972—DECIDED JUNE 16, 1972—
REHEARING DENIED JULY 14, 1972—

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Richard L. Chambers, H. Perry Michael, Timothy J. Sweeney, Assistant Attorneys General,* for appellant.

*Norton, Smith & Majors, William L. Norton, Jr., Raymond A. Majors, Harmon T. Smith, Troy R. Millikan,* for appellee.

DEEN, Judge, concurring in the judgment. Exclusion *Code Ann* § 92-3403a (C) (2) (b) includes a group of chemicals used in growing edible industrial products (insecticides, fungicides, growth regulating chemicals and fertilizer) and also feed for poultry whether used directly by the poultry or placed in the soil in the process of "poultry husbandry." The obvious intent of this sentence, as related to the raising and marketing of poultry, is to include chemicals involved in the process, whether the chemicals are directly ingested as food or placed in things which become food. I consider the definition and its purport sufficiently broad to include chemicals in the form of drugs, which became a part of the food as healthy growth factors or which tend to healthy growth as fungicides, bacteriacides, etc., so as to be considered "feed for poultry." The fact that the chemical is (a) placed in the food, or (b) placed in the water or (c) placed directly in the animal by inoculation, is irrelevant to the process of animal husbandry. Obviously in many cases it would be possible to choose between the three methods of making the chemical available as a part of the feeding process. The Webster definition for food includes "supplementary substances . . . taken into the body . . . to sustain growth, repair . . . and all vital processes." I grant that a distinction is ordinarily made between food and drugs, but I think the subject matter of this exclusion indicates an intent to include both insofar as animal husbandry is concerned.

PANNELL, Judge, dissenting. The majority places all the emphasis in the exclusionary clause on the words "industrial materials." Assuming for the sake of argument that the growing of poultry is an industry and that the materials here used were industrial materials, they were not

industrial materials "for the future *processing, manufacture or conversion*" of the chickens "into articles of tangible personal property for re-sale" and even if they were, they do not "become a component part of the finished product," that is, the grown chicken as is required. The majority follow the opinion of the learned trial judge, who in my opinion, put too much emphasis on saying that the growth and production of poultry was an industrial activity and by inference, that anything used in the "growth and production of poultry" is included in materials for "processing, manufacture and conversion," and also that such materials, because they are used to "grow and produce" the poultry automatically become a "component part of the finished product," the grown chicken, or were "coated upon and impregnated into the product" in some stage of the processing, manufacture or conversion. The antibiotics given to the chickens for health purposes do not, in my opinion, meet the requirements of something impregnated into the product, as the antibiotic is probably long since dissipated by the time the chicken is ready for the market. As to this particular aspect, however, I would be inclined to agree, if the antibiotic is given to the chicken before slaughter solely to preserve the meat after slaughter.

I see no question of double taxation involved in the present case, or of duplication of tax, as none of the items sought to be taxed are a "component part of the finished product." However, where the antibiotics are used as a component part of the chicken feed sold to other parties, the antibiotics are exempt from the sales and use tax, and a proper determination as to this presents a jury question.